NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 08 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



MARNIE MASUDA-CLEVELAND, )

Plaintiff-Appellant,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

No. 17-17149

D.C. No. 1:16-cv-00057-LEK-RLP

MEMORANDUM*

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Submitted April 16, 2019**
San Francisco, California

Before: D.W. NELSON, FERNANDEZ, and BEA, Circuit Judges.

Marnie Masuda-Cleveland appeals the district court's grant of summary

---

*This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

judgment in favor of Life Insurance Company of North America ("LINA") in her ERISA[1] action to recover benefits under an accident plan ("the Plan") created by the employer of her husband, Harlan Masuda, for the benefit of its employees. *See* 29 U.S.C. § 1132(a)(1)(B). We vacate and remand.

Masuda-Cleveland asserts that the district court erred because it did not give her an opportunity to submit additional evidence to support her claim for benefits and because it determined that LINA did not have a substantial conflict of interest beyond the structural conflict it had as both the Plan administrator and the payor of benefits under the Plan. We agree.

(1)    The Plan provided coverage for death from injuries that were "caused by an accident" and "from no other causes." Through most of the administrative process regarding the benefit claim, LINA essentially agreed that Harlan Masuda's death was caused by the injuries he received in the accident, but asserted that a medical event caused the accident itself.[2] However, in LINA's ultimate decision,

---

[1]Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, 88 Stat. 829 (codified as amended in scattered sections of 26 & 29 U.S.C.) (hereinafter, "ERISA").

[2]We note that the physician forensic-pathologist who completed an autopsy was satisfied that his death was, indeed, caused by the accident, although she speculated that he might have suffered "an acute medical event" that led to the accident.

2

which led to this review, it changed its position and declared that the death was not caused by the injuries he received in the accident, but was caused by the medical event itself. In so doing, it relied upon a report from a different physician forensic-pathologist that had not been previously disclosed. LINA also refused to consider any new evidence to rebut the conclusions in that report. Even if all further review was foreclosed at LINA's level,[3] LINA's new rationale for denying benefits substantially bolstered its denial position.[4] The district court should have allowed Masuda-Cleveland to submit, and should have considered, rebutting evidence.[5] The court's failure to do so of necessity affected its decision that LINA had no more than a structural conflict of interest. Thus, the district court erred.

(2)  When a district court reviews an administrator's discretionary decision regarding a welfare plan pursuant to ERISA, it must decide on the level of skepticism it should bring to that review, and whether the administrator reached its decision in a procedurally sound fashion. *See Abatie v. Alta Health & Life Ins.*

---

[3]*See Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 963 (9th Cir. 2014).

[4]We note that a prior case, where a plan accorded no discretionary authority, pointed to a possible weakness in LINA's denial position before the final review. *See McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1134–36 (9th Cir. 1996) (per curiam).

[5]*See Gabriel*, 773 F.3d at 964.

*Co.*, 458 F.3d 955, 968–69, 971–72 (9th Cir. 2006) (en banc); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 957, 103 L. Ed. 2d 80 (1989); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872–73 (9th Cir. 2008). The district court recognized that principle, but, in effect, determined that the level of the skepticism factor here would be the rather minimal amount resulting only from LINA's inherent conflict of interest. We, however, see the conflict as greater than that.

In addition to the inherent structural conflict of interest, there are other indicia that suggest a higher level of skepticism is warranted:

(a)      LINA never directly contacted the original physician forensic-pathologist who conducted the autopsy. That would have been the most prudent course and, indeed, was suggested in an internal manual that, at least at one time, was used by LINA.

(b)      LINA obtained a new report after the prior reviews and used that report to reject the claim on a basis quite different from the previously used basis.

(c)      The evidence that the decedent actually had a fatal cardiac event was weak.

(3)      The above errors leave us to speculate about what decision the district court would have reached had it factored in a higher level of skepticism and taken

4

more account of LINA's procedural errors.  Thus, we vacate the judgment and remand to the district court for further proceedings consistent with this disposition.[6]

VACATED and REMANDED.  Costs are to be taxed against LINA.

_____

[6]We express no opinion, however, as to the result the district court should reach on remand.  Nor do we purport to opine on the meaning of the Plan's requirement that a death be "caused by an accident" and "from no other causes." Once the district court has considered Masuda-Cleveland's outside evidence and factored heightened skepticism to account for LINA's structural conflict of interest and procedural errors into its abuse of discretion analysis, it should reach its own determination whether the facts of this case result in coverage or lack of coverage for Masuda-Cleveland.